**VERSA CORPORATION, an Oregon corporation, Plaintiff,**

v.

**AG–BAG INTERNATIONAL LIMITED, a Delaware corporation, Defendant.**

**No. 8:01CV527.**

United States District Court, D. Nebraska.

June 10, 2003.

David Axelrod, Christopher Lewis, Schwabe, Williamson Law Firm, Portland, OR, John P. Passarelli, Mcgrath, North Law Firm, Omaha, NE for Defendant.

Shane M. Niebergall, Dennis L. Thomte, Thomte, Mazour Law Firm, Omaha, NE, for Versa Corp.

## MEMORANDUM AND ORDER

BATAILLON, District Judge.

Before me is the defendant's request, Filing No. 19, for a construction of the

patent claims at issue in this infringement action. The parties submitted briefs and evidence in support of their positions.

■ The defendant's request is made pursuant to *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). In a patent infringement case, a *Markman* hearing allows the court to interpret the terms of a patent, including terms of art within the patent claim. The construction of the terms in a patent is a matter of law reserved entirely for the court. *Id.* at 372, 116 S.Ct. 1384. The court's interpretation of terms then controls in subsequent determinations about whether a patent has been infringed or is invalid. The court held a hearing on the request on October 25, 2002.

### Background

Versa is suing Ag–Bag for infringement of Versa's United States Patent No. 5,894,-713 (the " '713 patent"), which covers a "Density Control Means for an Agricultural Feed Bagging Machine." Both companies manufacture and sell agricultural bagging machines. Bagging machines force organic materials used for animal feed into curing or storage bags.

The machine that includes the '731 patent is designed to control the density of silage as it is conveyed into large plastic bags up to 12' in diameter and 500' long. The bags fit over the output end of a tunnel through which a rotor has forced the silage. The patented device at issue controls the density of the silage passing through the tunnel with a number of bars that are attached to a shaft. The shaft can be rotated to vary the angle and degree at which the bars contact the silage, thereby controlling its density as it is compacted into the bag.

### Legal Standard

■ To interpret a claim, the court begins with "intrinsic evidence," *i.e.,* the patent itself, including the specification, and the prosecution history, if it is in evidence. *Interactive Gift Express, Inc. v. Compuserve, Inc.,* 256 F.3d 1323, 1331–32 (Fed.Cir.2001). The court may look at all applications in the chain leading to the grant of the patent when examining the prosecution history. *Wang Lab., Inc. v. America Online, Inc.,* 197 F.3d 1377, 1384 (Fed.Cir.1999).

■ The actual language of the claims is given its ordinary meaning as understood by one skilled in the art. *Hockerson–Halberstadt, Inc. v. Avia Group Int'l, Inc.,* 222 F.3d 951, 955 (Fed.Cir.2000). This ordinary meaning controls unless the patentee clearly defines a word differently in the specification or the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996). If after this analysis a claim limitation is still unclear, the court then looks to extrinsic evidence, such as dictionaries, technical articles, expert testimony, or the inventor's testimony. *Dow Chem. Co. v. Sumitomo Chem. Co.,* 257 F.3d 1364, 1372–73 (Fed.Cir.2001).

### Discussion

The '713 patent has nine claims, but Ag–Bag asks the court to construe only certain terms from independent claims 1 and 7. Claim 1 describes the device. It states in part, with the terms and elements to be construed emphasized:

An agricultural bagging machine comprising . . .

**a silage density control means** in the Intake end of said tunnel positioned rearwardly of said rotor **for engagement with the silage material** being forced through said tunnel by said rotor

to **permit the density** of the silage material in the bag,

said silage decontrol means including a plurality of horizontally spaced-apart density-bars located between said tunnelside walls and being selectively operably movable within the flow of silage material being forced rearwardly through said tunnel into the bag by said rotor,

said density bars being secured to an elongated, horizontally disposed rotatable shaft positioned in said tunnel transverse to the path of the silage material,

said density bars **extending rearwardly and downwardly** from said shaft into the path of the silage material being forced rearwardly through said tunnel into the bag by said rotor to resist the flow of silage into said tunnel; and means operatively connected to said shaft means for selectively rotating said shaft about its longitudinal axis, less than a full rotation to selectively change the angle at which the density bars contact the flow of silage to vary the resistance created by said density bars thereby selectively varying the density of the silage material in the bag.

Filing No. 28, Ex. 1, col. 3, 55; col. 4, 6–61.

Claim 7 sets out the process for using the device described in Claim 1. It states in part, with the terms and elements to be construed emphasized:

The method of bagging silage material ... comprising the steps of:

providing a bagging machine including a wheeled frame **having a ... silage density control means** in the **intake end of said tunnel** positioned rearwardly of said rotor **for engagement with the silage material** being forced through said tunnel by said rotor to **Permit** [sic] **the density** of the silage material in the baa [sic] **to be controlled**, said silage density control means including a Plurality [sic] of hori-

zontally spaced-apart density bars located between said tunnel side walls and being selectively operably movable within the flow of silage material being forced rearwardly through said tunnel into the bag by said rotor, said density bars being secured to an elongated, horizontally rotatable shaft positioned in said tunnel transverse to the path of the silage material;

*Id.*, col. 4, 1, 3, 65–67; col. 5, 1–11.

■ *"Density Control Means."* The claims both state that the function of the density control means is "for engagement with silage material ... to permit the density of the silage ... to be controlled" as the silage moves through the tunnel. Ag–Bag contends that Versa's use of the term "density control means" in both claims triggers the means-plus-function analysis of 35 U.S.C. § 112, ¶ 6. Consequently, Ag–Bag states, "Versa is not entitled to any means for controlling density by engagement with the silage material, but only the embodiments described in the specification." Ag–Bag's *Markman* Brief at 10.

Here, the specification states:

The density control means 34 includes a horizontally disposed shaft or pipe 36 which extends from one side of the tunnel 14 to the other side thereof rearwardly of the rotor 32. Shaft 36 is suitably rotatably mounted at its opposite ends to the tunnel 14 and has a plurality of spaced-apart density control bars 38 secured thereto and extending rearwardly and downwardly therefrom as illustrated in the drawings.

Filing No. 28, Ex. 1, col. 3, 18–25. Ag–Bag therefore contends that the "density control means" must be construed as "a device that includes, 'as illustrated in the drawings,' a horizontally disposed shaft, positioned immediately behind the front wall of the tunnel, with density control bars mounted thereon that extend rear-

wardly toward the output end and downwardly toward the tunnel floor." Ag–Bag's *Markman* Brief at 10 (quoting the '713 patent).

If § 112, ¶ 6 does apply, the claim limitation will cover the corresponding structure disclosed in the specification. That structure or device must perform the identical function specified in the claim and employ means identical to or the equivalent of the structure disclosed in the patent specification for performing that function. *Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1042 (Fed.Cir.1993).

Generally, use of the phrase "means for" in a claim limitation creates a presumption that § 12, ¶ 6 applies. *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1360 (Fed.Cir.2000). The presumption that means language triggers § 112, ¶ 6 is rebuttable, however, if "the properly construed claim limitation itself recites sufficiently definite structure to perform the claimed function." *Id.* at 1360. If the court finds that a claim limitation falls within § 112, ¶ 6, however, construction of the limitation has two steps: 1) identifying the function recited in the claim, and 2) identifying the corresponding structure in the specification that performs that function. *Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1369 (Fed.Cir.2001).

Versa acknowledges that it uses the word "means" in Claims 1 and 7, but it maintains that the "silage density control means" is sufficiently described in structural detail within Claim 1 to remove this term from a means-plus-function analysis. Versa points to the amount of structural detail in Claim 1, *see* Filing No. 28, Ex. 1, col. 4, 11–19, and notes that Claim 1 structurally places the density control means in the intake end of the tunnel, to the rear of the rotor. Likewise, Versa maintains, Claim 7 should not be subject to a means-plus-function analysis since the claim recites sufficient structure for performing

the stated function of engaging the silage to control its density through means of the "plurality of horizontally spaced-apart density bars." According to Versa, Claim 7 adds the extra step that explains the method, *i.e.*, how the structure which is structurally described in Claim 1 carries out the stated function.

I concur. Both Claims 1 and 7 provide adequate detail to show exactly how the structure described performs the function claimed, without any resort to an analysis of the specification. Merely because "claims are interpreted in light of the specification does not mean that everything expressed in the specification must be read into all the claims." *SRI International v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed.Cir.1985). When construing terms, a court must focus first on the claims. "If everything in the specification were required to be read into the claims, or if structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims. Nor could an applicant, regardless of the prior art, claim more broadly than that embodiment." *Id.*

Moreover, even assuming § 112, ¶ 6 does apply to the "silage density control means," Ag–Bag's proposed construction would be too narrow because it draws only on the embodiments in the specification. Under § 112, ¶ 6, the means-plus-function limitation covers the corresponding structure, material, or acts described in the specification as well as their equivalents. Thus, the proper claim interpretation must include not only the structure in the specification for performing the function, but also all equivalent structures. The specification language quoted above does not mean that the "density control means" must and can only be, as Ag–Bag maintains, a horizontally disposed shaft, posi-

tioned right behind the front tunnel wall, with mounted control bars extending to the rear toward the output end and down toward the floor.

I agree with Versa's position that other specification language, *see* Filing No. 28, Ex. 1, col. 3, 25–27, 40–45, indicates that the structure needed to perform the function is "simply a horizontally disposed rotatable shaft that is positioned in the path of the silage material and a plurality of horizontally spaced-apart density bars that are secured to the shaft so that they are movable within the flow of the silage," Versa's *Markman* Brief at 8. This is precisely the structure found in Claims 1 and 7.

■ Accordingly, the term "density control means" is construed to mean, with no other limitation, a horizontally disposed rotatable shaft that is positioned traverse to the path of the silage material, having a plurality of horizontally spaced-apart density bars extending from and secured to the shaft so that they are movable within the flow of the silage.

■ *Location of the Density Control Means.* Both Claim 1 and Claim 7 state that the density control means is positioned "in the intake end of the tunnel." Ag–Bag maintains that this means that the density control means must be located "where the silage material first comes into the tunnel, which is immediately aft of the front wall and directly opposite to the output end of the tunnel." Ag–Bag's *Markman* Brief at 10. The specification does not expressly define the term "intake end," but Ag–Bag points to specification language describing the bagging machine as being "comprise[d of] a wheeled frame means having rearward and forward ends. A tunnel is provided on the wheeled frame means and has an intake end for receiving silage material and an output end which is adapted to receive the mouth of an agricultural bag." Filing No. 28, col. 2, 15–19.

Ag–Bag says that Figures 1 and 2 of the '713 patent show the intake end as the place immediately behind the front wall of the tunnel. *Id.* at 2, 3. Further, Ag–Bag notes that the inventor stated during his deposition that the forward end of the tunnel was the same as the intake end of the tunnel. *Id.,* Ex. 4, 5:10–16.

I can find no support in the claims or specification for requiring the "intake end of the tunnel" to be limited to "immediately behind the front wall of the tunnel." The claims clearly describe the intake end of the tunnel as the place where the silage enters the bagging machine. No further construction is necessary. Consequently, I reject Ag–Bag's suggested construction.

■ *"Rearwardly and Downwardly."* Ag–Bag says the corresponding structure for the "density control means," as discussed above, requires the density control bars to extend rearwardly and downwardly. Further, Ag–Bag says that Claim 1 expressly requires that exact configuration: "said density bars extending rearwardly and downwardly from said shaft into the path of the silage material." *Id.,* Ex. 1, col. 4, 21–22. Ag–Bag contends that if "rearwardly and downwardly" are then given their ordinary meanings as understood by one skilled in the art, "the rearwardly and downwardly limitation can only be construed to mean that the density bars extend from the front wall of the tunnel towards the output end and from an upper location towards the floor of the tunnel." Ag–Bag's *Markman* Brief at 12. Ag–Bag maintains that the prosecution history supports this construction, since Versa allegedly expressly gave up coverage for "upstanding" density control bars. *See id.* at 12–13.

Versa agrees that the words "rearwardly and downwardly" in Claim 1 retain their usual and unambiguous meaning. Versa notes, however, that the density bars ex-

tend out from the shaft so that they engage the silage as it moves toward the tunnel's end. The density of the silage is controlled by increasing or decreasing the number of bars in the path of the silage and/or by rotating the shaft to change the angle at which the bars contact the silage as it is forced into the bag. Versa says the same construction works for Claim 7 even though it does not use the term "rearwardly and downwardly," since the final step of Claim 7 provides that the silage's density is controlled by causing a portion of the silage to pass between control bars that are horizontally spaced apart and attached to the long rotatable shaft. According to Versa, the court should read no further limitation into the claim.

Versa says that Ag–Bag's proposed construction improperly assumes that the claim requires the shaft to be located in the upper end portion of the machine. Versa argues that the claims do not limit the vertical positioning of the shaft, but merely require the density bars to be adjustable within the flow of silage through the tunnel. Under this construction, "the claims language would cover a location of the shaft at any point between the upper and lower ends of the bagging machine and rotating the density bars in any direction so long as they engaged the silage material as it flowed through the device." Versa's *Markman* Brief at 11. Versa dismisses Ag–Bag's arguments based on patent history since nowhere did the Appeals Board state that the patent for Versa's bagging machine was based on the angle or directional disposition of the density bars. *Id.* at 12–13.

I agree with the construction proposed by Versa. "[A]s a general rule claims of a patent are not limited to the preferred embodiment or to the examples listed within the patent specification." *Dow Chem. Co. v. United States*, 226 F.3d 1334, 1342 (Fed.Cir.2000) (internal citations omitted). I therefore find that the term "downwardly and rearwardly" description found in Claim 1 is not a structural limitation but instead refers to the positioning of the density control means, *i.e.*, the orientation of the control bars.

Accordingly,

IT IS ORDERED that the claim language of the '713 patent shall be interpreted as set forth in this order.