**TELEFLEX, INC., Plaintiff–Appellee,**

v.

**FICOSA NORTH AMERICA CORP., Fico Cables, S.A., and Ficosa North America S.A. De C.V., Defendants–Appellants.**

No. 01–1372.

United States Court of Appeals, Federal Circuit.

Decided June 21, 2002.

Rehearing and Rehearing En Banc Denied Aug. 30, 2002.

Kenneth R. Adamo, Jones, Day, Reavis & Pogue, of Cleveland, Ohio, argued for defendants-appellants. With him on the brief were Joseph D. Pollack and David M. Maiorana, of Cleveland, Ohio; and Gregory A. Castanias, of Washington, DC.

Steven Susser, Young & Susser, P.C., of Southfield, Michigan, argued for plaintiff-appellee. With him on the brief was Rodger D. Young. Of counsel on the brief

were John E. Carlson and Anthony P. Cho, Carlson, Gaskey & Olds, P.C., of Birmingham, Michigan; and Darrel C. Karl, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC.

Before RADER, GAJARSA, and LINN, Circuit Judges.

LINN, Circuit Judge.

Ficosa North America Corporation, Fico Cables, S.A., and Ficosa North America S.A. de C.V. ("Ficosa") appeal the final judgment of the U.S. District Court for the Eastern District of Michigan entered in favor of Teleflex, Inc. ("Teleflex"). The district court entered judgment following a jury verdict that Ficosa infringed Teleflex's U.S. Patent No. 5,632,182 ("the '182 patent"), and that Teleflex's U.S. Patent No. 4,581,953 ("the '953 patent") and the '182 patent were not invalid. Ficosa appeals the denial of its motion for judgment as a matter of law ("JMOL") of non-infringement of claim 1 of the '182 patent, the grant of summary judgment of no best mode violation in the '182 patent, the denial of its JMOL motion of invalidity of the '182 patent, and the denial of its JMOL motion of invalidity of the '953 patent. Because the district court correctly granted summary judgment of no best mode violation and substantial evidence supports the jury verdict of infringement and validity, we affirm the district court's decision on appeal.

## BACKGROUND

· Teleflex is the assignee of the '182 patent and the '953 patent. The '182 patent is directed to a "Serviceable Clip Core Coupling," which is a component of a two-piece shift cable installed by General Motors ("GM") in certain sport utility vehicles. The two-piece shift cable connects the shift knob with the automatic transmission of the sport utility vehicle so that when a driver moves the shift knob, e.g., from "Park" to "Drive," the transmission is engaged. The two-piece cable allows GM to wait until an advanced stage of the manufacturing process before putting the two pieces together and permits the cable to be taken apart later for servicing.

Claim 1 of the '182 patent recites:

1. A motion transmitting remote control assembly (10) comprising:

a first core element section (12) for transmitting motion;

a first guide length for movably supporting said first core element section (12);

a second core element section (14) for transmitting motion;

a second guide length for movably supporting said second core element section (14);

connection means for locking said first (12) and second (14) core element sections together in a locked position mechanically prevented from moving relative to one another axially in either direction; and

characterized by said connection means *including a clip (28) manually insertable into and manually removable from said locked position mechanically interlocking said core element sections together while moving axially · within said guide lengths,*

said connection means including a female member (24) attached to an end of said first core element section (12) and a male member (26) defining an end of said second core element section (14), said male member (26) presenting a male groove (30), said female member (24) having at least one slot (32) extending tangentially therethrough, *said clip (28) being disposed about said female member (24) and extending through said slot (32) and into said male groove*

*(30) for mechanically interlocking said core element sections together in said locked position.*

'182 Patent, col. 3, ll. 45–66, col. 4, ll. 1–10 (emphases added).

The parties disputed at trial the interpretation of the claim term "clip (28)." The district court construed the term in the jury instructions as follows:

In claim 1 of the '182 patent, the term "clip" means a structure that has a single pair of legs which provide the dual functions of disposing the clip around and holding the female member through the slots in the female member and extending through the slots into the groove in the male member to lock the members together.

Figure 1 of the '182 patent is reproduced below:

The '953 patent is directed to a "Molded Terminal with Vibration Dampener Pocket." The '953 patent describes an invention that allows for attachment of the shift cable to the shift knob and the transmission in a manner that minimizes noise and vibration transmitted from the transmission to the shift knob.

Claim 1 of the '953 patent recites:

1. A motion transmitting remote control assemly [sic] (10) for transmitting motion in a curved path, said assembly (10) comprising: guide means (12); core means (18) movably supported by said guide means (12) and extending therefrom to provide a variable extending length of said core means (18) between said guide means (12) and one end (20) therefor to define a line of force; and an integral terminal member (22) for operatively interconnecting said extending length of said core means (18) and a control member (24) through a ball pin (32) and having an opening (36) therethrough defining an axis being perpendicular relative to said line of force, *said terminal member (22) including a resilient integral vibration dampening member (38) totally encapsulated therein* and defining a portion of said opening (36) and including *a retaining pocket* for retaining the ball pin (32) of the control member (24) therein, said retaining pocket including a resilient cylindrical wall (40) and *an annular integral flexible flange (42)* extending into said opening (36) from said wall (40) for engaging and retaining the ball pin (32) extending from the control member (24) within

said cylindrical wall (40), said vibration dampening member (38) further including *a resilient substantially cylindrical containing pocket* extending from said flexible flange (42) and away from said retaining pocket.

'953 Patent, col. 4, ll. 57–68, col. 5, ll. 1–14 (emphases added).

Claim 6 of the '953 patent recites:

6. An assembly as set forth in claim 1 further characterized by said terminal member (22) including a plurality of slots (56) therethrough extending radially from said axis defined by said opening (36) about said retaining pocket of said opening (36).

'953 Patent, col. 6, ll. 8–12.

Figure 3 of the '953 patent shows a side view and is reproduced below:

*Fig. 3*

Both Teleflex and Ficosa manufacture shift cables for automobiles. Teleflex has traditionally focused on the North American market and Ficosa on the European market. In 1990, they entered a joint venture to sell cables in Europe, but the venture was dissolved in 1997.

Teleflex supplied GM with two-piece shift cables from the inception of the "GMT–800 program" for use in GM manufactured sport utility vehicles. In 1997,

Teleflex learned of Ficosa's efforts to supply GM with cables for the GMT–800 program, and the parties exchanged letters concerning possible infringement by Ficosa of Teleflex's patents. Ficosa retained European patent counsel for an opinion concerning infringement of the European equivalent of the '182 patent.

Ficosa had its own design for the two-piece shift cable. An illustration of the Ficosa counterpart to the "clip (28)" recited in claim 1 of the '182 patent is reproduced below:

On August 3, 1998, Teleflex sued Ficosa for infringement of four patents, including the '182 and '953 patents. Ficosa counterclaimed for declaratory judgment of non-infringement and invalidity of all of the asserted patents. Teleflex voluntarily withdrew its claim based on one of the four patents, and the district court granted Ficosa's motion for partial summary judgment of non-infringement of another patent. These two patents were removed from the case, and the present appeal concerns only the remaining '182 and '953 patents.

On August 30, 1999, Teleflex moved for partial summary judgment of literal infringement of claim 1 of the '182 patent, which the district court granted on December 15, 1999. Six days prior to trial, Ficosa filed a motion to vacate the ruling of literal infringement of claim 1 in light of new evidence: the September 19, 2000 issuance of a patent to Ficosa. The district court granted Ficosa's motion and vacated its partial summary judgment ruling regarding claim 1 of the '182 patent.

The parties filed cross-motions for summary judgment concerning violation of the best mode requirement in the '182 patent. Ficosa argued that the inventor admitted during his deposition that he knew of a best mode for practicing the claimed invention in the following colloquy:

Q: Now, that change in the clip metal and the matching of the male member metal to the clip metal, was that the best way that you had to make this cable join at the time you did this work in 1995?

A: Yeah. Yep, yep. Yes.

Teleflex responded that the inventor clarified later in his deposition that the clip

metal and matching of the male member metal to the clip metal was done to satisfy GM's requests to reduce the insertion force and connector size, and the invention would work without these customer-specific details:

Q: Was the change in material on the core element connect, as referenced in the section of the deposition that I read to you a moment ago, critical to getting the core element connect design to meet General Motors specification or was it critical to getting the core element connect design to work at all?

A: To meet General Motors requirements. That was the problem.

On December 15, 1999, the district court granted Teleflex's motion, finding no violation of the best mode requirement. In its order, the court discussed the inventor's deposition testimony, and then stated:

In cases such as this one, satisfying requests of specific customer [sic] can be an exception to the best mode rule. . . . In this case, the '182 patent does not claim a cable assembly for the 1999 GM full-size pickup truck, just a cable assembly. Thus, the best mode does not include details particular to 1999 GM pickups.

Teleflex conceded during closing argument that it could not prove literal infringement of claims 1 and 6 of the '953 patent.

The following issues went to the jury: (1) infringement of claim 1 of the '182 patent, (2) validity of claim 1 of the '182 patent, (3) validity of claims 1 and 6 of the '953 patent, and (4) damages, if any, awarded to Teleflex for infringement by Ficosa of claim 1 of the '182 patent. On January 8, 2001, the jury found claim 1 of the '182 patent not invalid and infringed, and found damages of $552,778.00. The jury also found claims 1 and 6 of the '953 patent to be not invalid.

The parties filed various JMOL motions after the verdict. The district court en-tered final judgment on May 9, 2001, awarding Teleflex damages of $552,778.00 plus interest and costs, and permanently enjoined Ficosa from infringing the '182 patent.

Ficosa appeals the denial of its JMOL motion of non-infringement of claim 1 of the '182 patent, the grant of summary judgment of no best mode violation in the '182 patent, the denial of its JMOL motion of invalidity of the '182 patent, and the denial of its JMOL motion of invalidity of the '953 patent.

Exclusive jurisdiction is vested in this court pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I. Standard of Review

We review a district court's denial of JMOL without deference, reversing only if the jury's factual findings are not supported or if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings. *Door–Master Corp. v. Yorktowne, Inc.,* 256 F.3d 1308, 1312, 59 USPQ2d 1472, 1474 (Fed. Cir.2001). We review a district court's denial of a motion for JMOL de novo, reapplying the JMOL standard used by the district court. *Sextant Avionique, S.A. v. Analog Devices, Inc.,* 172 F.3d 817, 824, 49 USPQ2d 1865, 1869 (Fed.Cir.1999). JMOL is appropriate when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). On appeal, this court must "consider all the evidence in the record, including those facts that are in dispute, in the light most favorable to the nonmoving party, giving her the benefit of all reasonable inferences." *Christian v. Wal–Mart Stores, Inc.,* 252 F.3d 862, 867 (6th Cir.2001). "[T]he decision to grant judgment as a matter of law or to take the case away from the jury is

appropriate whenever there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ." *Jackson v. Quanex Corp.,* 191 F.3d 647, 657 (6th Cir.1999) (internal quotation marks omitted).

■ A determination of infringement, both literal and under the doctrine of equivalents, is a question of fact, reviewed for substantial evidence when tried to a jury. *Genentech, Inc. v. Wellcome Found. Ltd.,* 29 F.3d 1555, 1565, 31 USPQ2d 1161, 1168–69 (Fed.Cir.1994). Claim interpretation is a question of law, which we review de novo. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (en banc); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir. 1995) (en banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

■ What a prior art reference discloses in an anticipation analysis is a factual determination that we review for substantial evidence when decided by a jury. *See Acromed Corp. v. Sofamor Danek Group, Inc.,* 253 F.3d 1371, 1378–79, 59 USPQ2d 1130, 1135 (Fed.Cir.2001). "This court reviews a jury's conclusions on obviousness, a question of law, without deference, and the underlying findings of fact, whether explicit or implicit within the verdict, for substantial evidence." *LNP Engineering Plastics, Inc. v. Miller Waste Mills, Inc.,* 275 F.3d 1347, 1353, 61 USPQ2d 1193, 1197 (Fed.Cir.2001).

We review the grant of summary judgment de novo, drawing all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## II. Literal Infringement of the '182 Patent

Following the jury verdict finding that Ficosa infringed claim 1 of the '182 patent, Ficosa moved for JMOL, arguing there was no substantial evidence of infringement under the district court's claim construction of "clip (28)." At trial, Ficosa had argued in favor of the claim construction eventually adopted by the district court; Teleflex had argued for a substantially broader claim construction. Although Ficosa prevailed in its claim construction arguments, the jury decided the ultimate issue of infringement of the '182 patent in favor of Teleflex.

■ A two-step process is used in the analysis of patent infringement: first, the scope of the claims are determined as a matter of law, and second, the properly construed claims are compared to the allegedly infringing device to determine, as a matter of fact, whether all of the limitations of at least one claim are present, either literally or by a substantial equivalent, in the accused device. *See Johnson Worldwide Assocs. v. Zebco Corp.,* 175 F.3d 985, 988, 50 USPQ2d 1607, 1609 (Fed. Cir.1999). The first of these two steps is performed by the court and is subject to de novo review by this court. *Cybor,* 138 F.3d at 1456, 46 USPQ2d at 1174; *Markman,* 52 F.3d at 979, 34 USPQ2d at 1329. The second step in the infringement analysis requires a factual comparison of the claimed invention to the accused device, which is done by the fact finder. *See Winans v. Denmead,* 56 U.S. (15 How.) 330, 338, 14 L.Ed. 717 (1853). If tried to a jury, the jury's factual findings pursuant to the second step are reviewed by this court for lack of substantial evidence, *see Genentech,* 29 F.3d at 1565, 31 USPQ2d at 1168–69, as part of this court's reapplication of the JMOL standard. *Cybor,* 138 F.3d at 1467, 46 USPQ2d at 1172. "[S]ubstantial

evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biodex Corp. v. Loredan Biomedical Inc.*, 946 F.2d 850, 859, 20 USPQ2d 1252, 1259 (Fed.Cir.1991) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

In this case, the parties disagree as to whether the district court correctly performed the first step with regard to the "clip (28)" limitation in claim 1 of the '182 patent. Teleflex contends that "clip (28)" should be construed to mean any device, of any shape, that holds two things together and also performs the functions of being manually insertable into and manually removable from a locked position. Teleflex argues that the claim language does not support the construction applied by the district court, "clip" is defined nowhere in the specification or the prosecution history, and the district court committed a "cardinal sin" of claim construction by importing limitations from the written description into the claims. *See SciMed Life Sys., Inc. v. Adv. Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340, 58 USPQ2d 1059, 1062 (Fed.Cir.2001). Ficosa argues that the district court correctly construed the claim term "clip (28)."

The parties also disagree as to whether the jury correctly performed the second step in the infringement analysis of the '182 patent. Ficosa argues that under the construction of "clip (28)" as determined by the district court, the record lacks substantial evidence on which the jury could have based its finding of infringement. Teleflex argues that under either the district court's construction of "clip (28)" or Teleflex's preferred construction, substantial evidence appears in the record supporting the jury's verdict of infringement of the '182 patent.

We address each of the first and second steps of the infringement analysis below. Regarding the first step, we conclude that claim terms take on their ordinary and accustomed meanings unless the patentee demonstrated an intent to deviate from the ordinary and accustomed meaning of a claim term by redefining the term or by characterizing the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope. Regarding the second step, substantial evidence appears in the record to support the jury's verdict of infringement, and therefore we affirm the district court's denial of Ficosa's motion for JMOL.

### A. Claim Construction

■ We begin our claim construction analysis, as always, with the words of the claim. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed.Cir.1996). The claim language defines the bounds of claim scope. *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 619–20, 34 USPQ2d 1816, 1819 (Fed. Cir.1995). "[T]he claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248, 48 USPQ2d 1117, 1120 (Fed.Cir.1998). "[T]he language of the claim frames and ultimately resolves all issues of claim interpretation." *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023, 43 USPQ2d 1545, 1548 (Fed.Cir.1997).

■ The words used in the claims are interpreted in light of the intrinsic evidence of record, including the written description, the drawings, and the prosecution history, if in evidence. *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256

F.3d 1323, 1331, 59 USPQ2d 1401, 1407 (Fed.Cir.2001). The intrinsic evidence may provide context and clarification about the meaning of claim terms. *York Prods., Inc. v. Cent. Tractor Farm & Family Ctr.,* 99 F.3d 1568, 1572, 40 USPQ2d 1619, 1622 (Fed.Cir.1996). "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Vitronics,* 90 F.3d at 1582, 39 USPQ2d at 1576.

 In the absence of an express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary meaning. *York Prods.,* 99 F.3d at 1572, 40 USPQ2d at 1622. We indulge a "heavy presumption" that a claim term carries its ordinary and customary meaning. *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366, 62 USPQ2d 1658, 1662 (Fed.Cir.2002). The ordinary meaning of a claim term may be determined by reviewing a variety of sources, including the claims themselves, *see Process Control Corp. v. HydReclaim Corp.,* 190 F.3d 1350, 1357, 52 USPQ2d 1029, 1033 (Fed.Cir.1999), other intrinsic evidence including the written description and the prosecution history, *see, e.g., DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1324, 57 USPQ2d 1889, 1894 (Fed.Cir.2001), and dictionaries and treatises, *see, e.g., Schaefer Fan Co. v. J & D Mfg.,* 265 F.3d 1282, 1288–89, 60 USPQ2d 1194, 1199 (Fed.Cir.2001) (approving district court use of dictionaries to determine ordinary meaning); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1105, 39 USPQ2d 1001, 1005 (Fed.Cir.1996) (citing footwear treatise for definition of shoe "upper"). But in any event the ordinary meaning must be determined from the standpoint of a person of ordinary skill in the relevant art. *See Zelinski v. Brunswick Corp.,* 185 F.3d 1311, 1316, 51 USPQ2d 1590, 1593 (Fed. Cir.1999).

 Among the intrinsic evidence, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics,* 90 F.3d at 1582, 39 USPQ2d at 1576. "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.,* 232 F.3d 877, 882, 56 USPQ2d 1836, 1839 (Fed.Cir.2000). For example, an inventor may choose to be his own lexicographer if he defines the specific terms used to describe the invention "with reasonable clarity, deliberateness, and precision." *In re Paulsen,* 30 F.3d 1475, 1480, 31 USPQ2d 1671, 1674 (Fed.Cir.1994). Such a definition may appear in the written description, *see Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1388, 21 USPQ2d 1383, 1386 (Fed.Cir.1992), or in the prosecution history, *see Vitronics,* 90 F.3d at 1582, 39 USPQ2d at 1576 (citing *Hoechst Celanese Corp. v. BP Chems. Ltd.,* 78 F.3d 1575, 1578, 38 USPQ2d 1126, 1129 (Fed.Cir.1996)).

 The specification may limit the scope of the claims via other routes. The specification may assist in resolving ambiguity where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone. *See Eastman Kodak Co. v. Goodyear Tire & Rubber Co.,* 114 F.3d 1547, 1554, 42 USPQ2d 1737, 1741 (Fed. Cir.1997), *overruled on other grounds by Cybor,* 138 F.3d at 1467, 46 USPQ2d at 1172. The patentee may demonstrate an intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope. *See SciMed,* 242 F.3d at 1344, 58 USPQ2d at 1065.

 Likewise, the prosecution history may demonstrate that the patentee intended to deviate from a term's ordinary and accustomed meaning, i.e., if it shows the applicant characterized the invention using words or expressions of manifest exclusion or restriction during the administrative proceedings before the Patent and Trademark Office. "Arguments and amendments made during the prosecution of a patent application and other aspects of the prosecution history, as well as the specification and other claims, must be examined to determine the meaning of terms in the claims." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576, 34 USPQ2d 1673, 1676 (Fed.Cir. 1995). In particular, "the prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452, 227 USPQ 293, 296 (Fed.Cir.1985).

██ The role of the specification in construing the claims is in dispute in this case. As we have often stated, the claims must be read in view of the specification, *see Markman*, 52 F.3d at 979, 34 USPQ2d at 1329, but limitations from the specification are not to be read into the claims, *see Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186, 48 USPQ2d 1001, 1005 (Fed.Cir.1998). "That claims are interpreted in light of the specification does not mean that everything expressed in the specification must be read into all the claims." *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957, 220 USPQ 592, 597 (Fed.Cir.1983). In *SRI International v. Matsushita Electric Corp.*, we explained that our focus must be on the claims:

If everything in the specification were required to be read into the claims, or if structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims. Nor could an applicant, regardless of the prior art, claim more broadly than that embodiment. Nor would a basis remain for the statutory necessity that an applicant conclude his specification with "claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. It is the claims that measure the invention.

775 F.2d 1107, 1121, 227 USPQ 577, 585 (Fed.Cir.1985) (en banc) (plurality opinion).

Ficosa argues that where only one embodiment is disclosed in the specification, claim terms are limited to the embodiment disclosed, citing *Toro Co. v. White Consolidated Industries, Inc.*, 199 F.3d 1295, 53 USPQ2d 1065 (Fed.Cir.1999), *Wang Laboratories, Inc. v. America Online, Inc.*, 197 F.3d 1377, 53 USPQ2d 1161 (Fed.Cir. 1999), and *Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 59 USPQ2d 1865 (Fed. Cir.2001). A review of these cases and others demonstrates that our precedent establishes no such rule.

In *Toro*, we considered whether a claim that recited a cover "including" a restriction ring should be construed to require attachment of the ring to the cover. 199 F.3d at 1300, 53 USPQ2d at 1068–69. The specification described an embodiment showing the ring permanently attached to the cover and listed advantages of permanent attachment: "it automatically restricts the size of air inlet depending upon which operation is being conducted without having the operator manually insert or remove a replaceable ring." *Id.* at 1301, 53 USPQ2d at 1069. In our opinion concluding that "including" required attachment, we emphasized that the specification and drawings provided "context" for con-

struction of the claims. *Id.* We noted that "clear statements of scope" in the specification and prosecution history determined the correct claim construction. *Id.* at 1302, 53 USPQ2d at 1070.

In *Wang,* we construed the claim term "frame" to be limited to "character-based protocols," even though the ordinary meaning of the term could arguably be applied to "bit-mapped protocols." 197 F.3d at 1382, 53 USPQ2d at 1166. Although we noted that the only system described and enabled in the specification used a character-based protocol, we also noted that the intrinsic evidence did not describe bit-mapped protocols as included in the invention, and a person skilled in the art would not have understood bit-mapped protocols to be included. *Id.,* 197 F.3d 1377, 53 USPQ2d at 1165. The applicant during prosecution distinguished the "pel [picture element] level" from the "character level," and presented the invention as involving a character-based system. *Id.* at 1384, 53 USPQ2d at 1165. We described the correct approach to the inquiry:

> Although precedent offers assorted quotations in support of differing conclusions concerning the scope of the specification, these cases must be viewed in the factual context in which they arose. Whether an invention is fairly claimed more broadly than the "preferred embodiment" in the specification is a question specific to the content of the specification, the context in which the embodiment is described, the prosecution history, and if appropriate the prior art . . .

*Id.* at 1383, 53 USPQ2d at 1165.

In *Bell Atlantic,* we construed the term "modes" to be limited to the three categories described in the specification. 262 F.3d at 1273, 59 USPQ2d at 1875. Although the term's ordinary meaning may have supported a broader reading, *id.* at 1269, 59 USPQ2d at 1871, we found that

"the patentees defined the term 'mode' by implication, through the term's consistent use throughout the '786 patent specification." *Id.* at 1273, 59 USPQ2d at 1874. We also noted that the claim language and the prosecution history supported this construction. *Id.,* 262 F.3d 1258, 59 USPQ2d at 1875. Thus, we construed "modes" based on clear indications throughout the intrinsic evidence. *Id.* at 1273–74, 59 USPQ2d at 1874–76.

In sum, the number of embodiments disclosed in the specification is not determinative of the meaning of disputed claim terms. As we explained in *CCS Fitness,* an accused infringer cannot overcome the "heavy presumption" that a claim term takes on its ordinary meaning simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification or prosecution history. 288 F.3d at 1366, 62 USPQ2d at 1662. We hold that claim terms take on their ordinary and accustomed meanings unless the patentee demonstrated an intent to deviate from the ordinary and accustomed meaning of a claim term by redefining the term or by characterizing the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.

In this case, nothing in the intrinsic evidence indicates that "clip (28)" should be limited to "a single pair of legs." The language of asserted claim 1 does not support limiting the claim to a "single pair of legs." Neither "single" nor "pair of legs" appears in claim 1. Neither the specification nor the prosecution history includes an expression of manifest exclusion or restriction demonstrating an intent to limit "clip (28)" to a single pair of legs. The term "clip" is not defined in the specification or in the prosecution history, and although the specification describes only one embodiment of the clip, no "clear

statements of scope" limit the term "clip" to having a "single pair of legs." Furthermore, the ordinary meaning of "clip" is not restricted to having a "single pair of legs." The expert witnesses for Ficosa agreed that the ordinary meaning of "clip" is broad enough to encompass the accused Ficosa device in this case.

The district court thus erred by importing the "single pair of legs" limitation from the specification into the claim. Instead of using the specification as context, the district court apparently limited the "clip (28)" recited in claim 1 to the embodiment described in the specification. We have "cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification." *See Comark*, 156 F.3d at 1186, 48 USPQ2d at 1005 (quoting *Texas Instruments, Inc. v. United States Int'l Trade Comm'n*, 805 F.2d 1558, 1563, 231 USPQ 833, 835 (Fed. Cir.1986)). The specification describes only one embodiment of the claimed "clip (28)," but in the circumstances of this case the record is devoid of "clear statements of scope" limiting the term appearing in claim 1 to having "a single pair of legs." Absent such clear statements of scope, we are constrained to follow the language of the claims, rather than that of the written description. *See SRI*, 775 F.2d at 1121, 227 USPQ at 585. To the extent that the district court construed the term "clip" to be limited to the embodiment described in the specification, rather than relying on the language of the claims, we conclude that the district court construed the claim term "clip (28)" too narrowly. We construe the term "clip (28)" in claim 1 to mean a structure that provides the dual functions of disposing the clip around and holding the female member through the slots in the female member and extending through the slots into the groove in the male member to lock the members together.

### B. Comparison to the Accused Device

▮▮▮▮ Notwithstanding this error by the district court, "[w]hen we determine on appeal, as a matter of law, that a trial judge has misinterpreted a patent claim, we independently construe the claim to determine its correct meaning, and then determine if the facts presented at trial can support the appealed judgment." *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1560, 35 USPQ2d 1801, 1806 (Fed.Cir.1995). We may affirm the jury's findings on infringement or validity issues if substantial evidence appears in the record supporting the jury's verdict and if correction of the errors in a jury instruction on claim construction would not have changed the result, given the evidence presented. *See Weinar v. Rollform Inc.*, 744 F.2d 797, 808, 223 USPQ 369, 376 (Fed.Cir.1984) ("[A] reversal ... is not available to an appellant who merely establishes error in instructions.... Where the procedural error was 'harmless,' i.e., where the evidence in support of the verdict was so overwhelming that the same verdict would necessarily be reached absent the error, or the error was cured by an instruction, a new trial would be mere waste and affirmance of the judgment is required."), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1844, 85 L.Ed.2d 143 (1985). Under these circumstances, the error in claim construction is harmless and does not require a new trial. *See Ecolab Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1374, 62 USPQ2d 1349, 1357 (Fed.Cir.2002) ("When the error in a jury instruction could not have changed the result, the erroneous instruction is harmless." (internal quotations omitted)).

▮▮▮▮ In this case, the claim construction error by the district court had the effect of narrowing the scope of asserted claim 1. Thus, under the correct construction, claim 1 encompasses a broader scope

of subject matter. If a reasonable juror could have found literal infringement under a more narrow reading of claim 1, then the same reasonable juror could not have avoided finding literal infringement under the correct, broader construction of the claim. Thus, the district court's error was harmless. *See Ecolab,* 285 F.3d at 1374, 62 USPQ2d at 1357; *Weinar,* 744 F.2d at 808, 223 USPQ at 376.

 The record shows that Teleflex's expert testified concerning the operation and structure of the accused device, including the details of the Ficosa clip. The accused Ficosa cable, including the clip, was available to the jury, as was a detailed diagram of the Ficosa clip. Because the details of the Ficosa device were presented to the jury, we cannot say that substantial evidence was lacking in support of the jury's finding of infringement of claim 1 of the '182 patent. The district court's denial of Ficosa's motion for JMOL of non-infringement of the '182 patent is affirmed.

### III. Validity of the '182 Patent

Ficosa argues that the '182 patent is invalid for failure to disclose the best mode requirement and for obviousness. We address each of these issues in turn.

### A. Best Mode

Ficosa challenges the decision of the district court granting summary judgment of no best mode violation in the '182 patent. Ficosa argues that the inventor of the '182 patent testified that he knew of a "best way" of practicing the invention, including providing the clip with a particular thickness and matching the hardness of the clip and the male member. Ficosa relies on the statement of this court in *Chemcast Corp. v. Arco Industries Corp.,* "where the inventor has failed to disclose the only mode he ever contemplated of carrying out his invention, the best mode requirement is violated." 913 F.2d 923,

930, 16 USPQ2d 1033, 1039 (Fed.Cir.1990). The parties do not dispute that the thickness and hardness matching details were not included in the '182 patent disclosure.

Teleflex argues that the inventor, after his testimony concerning "best way," clarified that the thickness and hardness matching details were a function of GM's requirements. Teleflex contends that the inventor explained that in the absence of GM's specific requirements, the invention of the '182 patent would work with any particular thickness or hardness. Teleflex argues that the thickness and hardness of the materials of the clip are specific to the particular commercial embodiment of GM's GMT–800 program, and thus not the best mode of the invention of the '182 patent, citing *Christianson v. Colt Industries Operating Corp.,* 822 F.2d 1544, 1563, 3 USPQ2d 1241, 1255 (Fed.Cir.1987), *vacated on other grounds,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 ("[T]he 'best mode' is that of practicing the *claimed* invention. It has nothing to do with mass production or with *sales* to customers having particular requirements." (emphasis in original)).

The district court ruled in favor of Teleflex and granted summary judgment of no best mode violation:

> In cases such as this one, satisfying requests of specific customer [sic] can be an exception to the best mode rule.... In this case, the '182 patent does not claim a cable assembly for the 1999 GM full-size pickup truck, just a cable assembly. Thus, the best mode does not include details particular to 1999 GM pickups.

In our discussion of best mode, we first address the contours of the best mode requirement, and then apply the best mode requirement to the present facts. As discussed in more detail below, our analysis of compliance with the best mode

requirement must begin and remain focused on the language of the claim. Because the alleged best mode information in this case involves unclaimed subject matter relating to production details dictated by customer requirements, we find no error in the district court's grant of summary judgment of no best mode violation.

### 1. The Contours of the Best Mode Requirement

■ The best mode requirement appears in the patent statutes at 35 U.S.C. § 112, first paragraph: "The specification ... shall set forth the best mode contemplated by the inventor of carrying out his invention." The best mode requirement creates a statutory bargained-for exchange by which a patentee obtains the right to exclude others from practicing the claimed invention for a certain time period, and the public receives knowledge of the preferred embodiments for practicing the claimed invention. *Eli Lilly & Co. v. Barr Labs., Inc.,* 251 F.3d 955, 963, 58 USPQ2d 1869, 1874 (Fed.Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 913, 151 L.Ed.2d 879 (2002).

■ The purpose of the best mode requirement is to restrain inventors from applying for patents while at the same time concealing from the public preferred embodiments of the inventions they have in fact conceived. *See Transco Prods. Inc. v. Performance Contracting, Inc.,* 38 F.3d 551, 560, 32 USPQ2d 1077, 1084 (Fed.Cir. 1994). A holding of invalidity for failure to disclose the best mode requires clear and convincing evidence that the inventor both knew of and concealed a better mode of carrying out the claimed invention than that set forth in the specification. *Id.*

We have acknowledged that "the term 'mode' and the phrase 'carrying out the invention' are not definable with precision." *Wahl Instruments, Inc. v. Acvious, Inc.,* 950 F.2d 1575, 1579, 21 USPQ2d

1123, 1126 (Fed.Cir.1991). However, in explaining its purpose we have described the best mode requirement as "separate and distinct" from the enablement requirement of 35 U.S.C. § 112, first paragraph:

> Manifestly, the sole purpose of this [best mode] requirement is to restrain inventors from applying for patents while at the same time concealing from the public preferred embodiments of their inventions which they have in fact conceived.

*In re Gay,* 50 C.C.P.A. 725, 309 F.2d 769, 772, 135 USPQ 311, 315 (1962), *quoted in Spectra–Physics, Inc. v. Coherent, Inc.,* 827 F.2d 1524, 1532, 3 USPQ2d 1737, 1742 (Fed.Cir.1987). Indeed, this court has repeatedly disclaimed a link between enablement and best mode. *See, e.g., Glaxo Inc. v. Novopharm Ltd.,* 52 F.3d 1043, 1050, 34 USPQ2d 1565, 1569 (Fed.Cir.1995) (distinguishing between enablement and best mode).

■ Compliance with the best mode requirement is a question of fact which involves a two-pronged inquiry. *N. Telecom Ltd. v. Samsung Elecs. Co.,* 215 F.3d 1281, 1286, 55 USPQ2d 1065, 1068 (Fed. Cir.2000). The first prong is subjective, focusing on the inventor's state of mind at the time he filed the patent application, and asks whether the inventor considered a particular mode of practicing the invention to be superior to all other modes at the time of filing. *Id.* The second prong is objective and asks whether the inventor adequately disclosed the mode he considered to be superior. *See Amgen, Inc. v. Chugai Pharm. Co.,* 927 F.2d 1200, 1212, 18 USPQ2d 1016, 1025–26 (Fed.Cir.1991).

■ With respect to both the first and second prongs, "[t]he best mode inquiry is directed to what the applicant regards as the invention, which in turn is measured by the claims." *Engel Indus., Inc. v. Lockformer Co.,* 946 F.2d 1528, 1531, 20

USPQ2d 1300, 1302 (Fed.Cir.1991). *Accord N. Telecom,* 215 F.3d at 1286, 55 USPQ2d at 1068 ("As we have repeatedly held, the contours of the best mode requirement are defined by the scope of the *claimed* invention .... the party asserting invalidity must show that the asserted best mode relates directly to the claimed invention."); *Eli Lilly,* 251 F.3d at 963, 58 USPQ2d at 1874 ("[T]he extent of information that an inventor must disclose depends on the scope of the claimed invention."); *Chemcast,* 913 F.2d at 927, 16 USPQ2d at 1036 ("The other objective limitation on the extent of the disclosure required to comply with the best mode requirement is, of course, the scope of the claimed invention."); *Randomex, Inc. v. Scopus Corp.,* 849 F.2d 585, 588, 7 USPQ2d 1050, 1053 (Fed.Cir.1988) ("It is concealment of the best mode of practicing the *claimed invention* that section 112 ¶ 1 is designed to prohibit."); *Zygo Corp. v. Wyko Corp.,* 79 F.3d 1563, 1567, 38 USPQ2d 1281, 1284 (Fed.Cir.1996) ("The focus of a section 112 inquiry is not what a particular user decides to make and sell or even in what field the invention is most likely to find success. Rather, in keeping with the statutory mandate, our precedent is clear that the parameters of a section 112 inquiry are set by the *claims.*"); *Christianson,* 822 F.2d at 1563, 3 USPQ2d at 1255 ("[T]he 'best mode' is that of practicing the *claimed* invention.").

Although we have found violations of the best mode requirement for failure to disclose subject matter not strictly within the bounds of the claims, even in these cases the alleged best mode information bore a strong relationship to the claimed invention or implicated questions of concealment. *See Nobelpharma AB v. Implant Innovations, Inc.,* 141 F.3d 1059, 1065, 46 USPQ2d 1097, 1101 (Fed.Cir.1998) ("critical to the production of a functional implant"); *Great N. Corp. v. Henry Molded Prods., Inc.,* 94 F.3d 1569, 1572, 39 USPQ2d 1997, 1999 (Fed.Cir.1996) ("critical to practicing the claimed invention"); *Dana Corp. v. IPC Ltd. P'ship,* 860 F.2d 415, 420, 8 USPQ2d 1692, 1695 (Fed.Cir. 1988) ("necessary to satisfactory performance"); *Spectra–Physics, Inc. v. Coherent, Inc.,* 827 F.2d 1524, 1537, 3 USPQ2d 1737, 1746 (Fed.Cir.1987) ("necessary to the enjoyment of the invention"); *see also Engel Indus.,* 946 F.2d at 1531, 20 USPQ2d at 1302 ("Unclaimed subject matter is not subject to the disclosure requirements of § 112; the reasons are pragmatic: the disclosure would be boundless, and the pitfalls endless."); *DeGeorge v. Bernier,* 768 F.2d 1318, 1325, 226 USPQ 758, 763 (Fed.Cir.1985).

In *DeGeorge,* the specification failed to disclose a particular "engineering level of MT/ST [word processor]" and the Board of Patent Interferences found a violation of the best mode requirement. *Id.* We reversed:

> The board found no best mode in the DeGeorge applications. The board's analysis, however, was influenced by its erroneous count construction.... Because the properly construed count does not include a word processor, failure to meet the best mode requirement here should not arise from an absence of information on the word processor.

*Id.*

 The best mode requirement does not extend to "production details," including commercial considerations such as equipment on hand, availability of materials, relationships with suppliers, or customer requirements. *Young Dental Mfg. Co. v. Q3 Special Prods., Inc.,* 112 F.3d 1137, 1144, 42 USPQ2d 1589, 1594–95 (Fed.Cir.1997); *Wahl Instruments,* 950 F.2d at 1579, 21 USPQ2d at 1126; *Christianson,* 822 F.2d at 1563, 3 USPQ2d at 1255. Further, the best mode requirement does not extend to "routine details"

apparent to one of ordinary skill in the art. *Eli Lilly,* 251 F.3d at 963, 58 USPQ2d at 1874; *Young Dental,* 112 F.3d at 1144, 42 USPQ2d at 1595. Routine details need not be disclosed because one skilled in the art is aware of alternative means for accomplishing the routine detail that would still produce the best mode of the claimed invention. *Eli Lilly,* 251 F.3d at 966, 58 USPQ2d at 1877.

### 2. Application of the Best Mode Requirement

We begin our application of the best mode requirement with the language of the claim. Claim 1 of the '182 patent recites:

a clip (28) manually insertable into and manually removable from said locked position mechanically interlocking said core element sections together while moving axially within said guide lengths, ... said clip (28) being disposed about said female member (24) and extending through said slot (32) and into said male groove (30) for mechanically interlocking said core element sections together in said locked position.

'182 Patent, col. 3, ll. 45–66, col. 4, ll. 1–10. The claims do not mention any particular material, hardness, or material matching for the clip. The claims do not mention any particular thickness for the clip. Thus, the information alleged to be part of the best mode and alleged to be missing from the disclosure is unclaimed subject matter.

Here, the relationship between the alleged missing information and the claimed invention does not implicate the best mode requirement. The inventor stated that the particular hardness-matching and thickness of the clip was not necessary for operability of the invention of the '182 patent, but instead was dictated by the size and axial force specifications of General Motors. Nothing in the record refers to

axial forces, except for a statement in a parent application, issued as U.S. Pat. No. 5,577,415, and even there, axial forces are not discussed in the context of the thickness or material of the clip. This reference does not indicate that the thickness or material information is best mode information with respect to the claimed invention of the '182 patent.

The inventor testified that the clip thickness and hardness matching of the materials were not necessary to carry out the invention, but instead were dictated by customer requirements:

Q: So as you understand it, Mr. Reasoner, the design of a serviceable core element connect set forth in the '182 patent can work with clips of a variety of thicknesses?

[objection]

A: To answer your question, definitely yes. You can, if the General Motors requirement, when it came back and said, Mike, design it to 50 pound installation efforts, I could use everything standard and made an assembly a lot cheaper for Teleflex.

\* \* \* \* \* \*

Q: Focusing for a moment on the hardness of the male terminal and the clip, was it necessary to use this particular hardness for the '182 design as pictured in the '182 patent to work?

[objection]

A: Not to work. If, again, if the requirements from General Motors, or any customer, anybody who would have used, looked at this patent, 100 pound snap-in efforts, not a problem. Give me a hundred mills longer on the male terminal, not a problem. You could have hard-hard slip, soft-soft terminal and they'd go together.

Thus, rather than showing a material fact in dispute, the evidence demonstrates

that the alleged best mode information, the clip thickness and hardness matching information, was instead another example of production details that the law excepts from best mode disclosure. *See Eli Lilly,* 251 F.3d at 965, 58 USPQ2d at 1876.

Where the alleged best mode information relates to production details dictated by specific customer requirements and does not fall within the scope of the claims, we cannot say that the district court erred in its finding that there is no genuine issue of material fact regarding violation of the best mode requirement. Accordingly, we affirm the district court's grant of summary judgment of no best mode violation in the '182 patent.

## B. Obviousness

■ Ficosa argues that the district court erred by denying its JMOL motion of invalidity of the '182 patent based on obviousness. Ficosa contends claim 1 of the '182 patent is obvious over any one of several combinations of prior art references, including references from the "hose art." Ficosa acknowledges that the requisite suggestion or motivation to combine is missing from these references, *see Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.,* 231 F.3d 1339, 1343, 56 USPQ2d 1641, 1644 (Fed.Cir.2000), but contends that the required motivation may be found in the prior art itself, and in the nature of the problem to be solved, *see Brown & Williamson Tobacco Corp. v. Philip Morris Inc.,* 229 F.3d 1120, 1124–25, 56 USPQ2d 1456, 1459 (Fed.Cir.2000).

Teleflex argues in response that substantial evidence in the record supports the jury's verdict, including the testimony of expert witnesses that combinations of the cited references would not work. Teleflex argues that the cited references fail to disclose all limitations of claim 1 of the '182 patent, for example that the slots in the female member are not disclosed in

references within the analogous arts. Teleflex further argues that certain references relied upon by Ficosa are from fields of non-analogous art, and the question of whether the "hose art" is analogous was a fact question for the jury. *See In re Paulsen,* 30 F.3d 1475, 1481, 31 USPQ2d 1671, 1675 (Fed.Cir.1994). Teleflex contends that Ficosa failed to present evidence of motivation to combine, and that the record contains substantial evidence of commercial success showing objective indicia of non-obviousness. *See Graham v. John Deere Co.,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

■ In analyzing validity, "[t]he first step involves the proper interpretation of the claims. The second step involves determining whether the limitations of the claims as properly interpreted are met by the prior art." *Beachcombers, Int'l, Inc. v. WildeWood Creative Prods., Inc.,* 31 F.3d 1154, 1160, 31 USPQ2d 1653, 1658 (Fed. Cir.1994).

Given a proper interpretation of the claim, *see* Section II.A, *supra,* we must determine whether or not Ficosa has shown that no reasonable juror, in performing the second step of the analysis, could have found less than clear and convincing evidence of obviousness, including the required motivation to combine. We agree with Teleflex that Ficosa failed to make such a showing.

Although Ficosa argues that a motivation to combine the cited references may be found in the prior art itself, the evidence presented by Teleflex contradicted that assertion. Dr. Peterson, Teleflex's expert witness, testified that the prior art combinations cited by Ficosa failed to suggest using a clip with the Dickirson reference. Dr. Peterson commented on the testimony of Dr. Radcliffe, Ficosa's expert, and testified that he erroneously used the teachings of the '182 patent in hindsight to

suggest the use of a clip to solve the problem. Thus, the record shows substantial evidence supporting the jury's finding of validity.

 Moreover, the evidence supporting validity remains unaffected by our correction of the district court's claim construction. Dr. Peterson's testimony, including that concerning lack of motivation to combine and the use of hindsight by Ficosa's expert, constitutes substantial evidence of nonobviousness whether or not the "clip (28)" of claim 1 is limited to a "single pair of legs." Evidence introduced at trial, including Dickirson and other references cited by Ficosa, showed a lack of motivation to combine a serviceable connector with *any* clip, regardless of the presence of a "single pair of legs." Thus, the district court's claim construction error was 'harmless' with respect to the jury finding of nonobviousness. *See Ecolab*, 285 F.3d at 1374, 62 USPQ2d at 1357; *Weinar*, 744 F.2d at 808, 223 USPQ at 376.

 Regarding the argument that the required motivation to combine may be found in the nature of the problem, Ficosa's argument is unpersuasive. The showing of a motivation to combine must be clear and particular, and it must be supported by actual evidence. *In re Dembiczak*, 175 F.3d 994, 999, 50 USPQ2d 1614, 1617 (Fed.Cir.1999). Ficosa offers no evidence in support of its conclusory assertion that the nature of the problem supplies the necessary motivation to combine, much less a clear and particular showing. *See id.*

In addition, Teleflex presented evidence of commercial success, another basis upon which the jury could have concluded that the invention of claim 1 of the '182 patent was non-obvious. The record shows that Ficosa sold a substantial number of accused two-piece cables to GM for the GMT–800 program. In light of the sub-stantial evidence of non-obviousness in the record, we conclude that the district court properly denied Ficosa's JMOL motion of obviousness of claim 1 of the '182 patent.

## IV. Validity of the '953 Patent

Ficosa argues that the district court erred by denying its motion for JMOL of invalidity of the '953 patent. Ficosa contends that claims 1 and 6 of the '953 patent are anticipated by and/or obvious in view of "Spease Exhibit 11," a drawing of a terminal member that was, according to Teleflex, "a predecessor to the '953 patent." Ficosa argues that no substantial evidence appears in the record to support the jury's verdict that the '953 patent was valid.

Teleflex argues that Ficosa admitted in its brief that Spease Exhibit 11 lacks the limitation in claims 1 and 6 that the vibration-dampening member be "totally encapsulated." Teleflex argues that anticipation requires that a single prior art reference disclose every limitation of a claim, and Ficosa conceded that Spease Exhibit 11 failed to satisfy this requirement. Regarding obviousness, Teleflex argues that the teachings of the prior art fail to show the "totally encapsulated" feature described in the '953 patent, and even if they did, Ficosa failed to show any motivation to combine.

Ficosa responds by citing *In re Graves*, 69 F.3d 1147, 36 USPQ2d 1697 (Fed.Cir. 1995), for the proposition that a prior art reference may anticipate if a skilled artisan could take the reference's teachings in combination with his own knowledge of the particular art and be in possession of the invention. According to Ficosa, the prior art—including another Teleflex patent—establishes that one of ordinary skill would have known how to "totally encapsulate[ ]" according to claims 1 and 6 and therefore,

given Spease Exhibit 11, would have been in possession of the '953 invention.

Again, our validity analysis entails a two-step procedure: "The first step involves the proper interpretation of the claims. The second step involves determining whether the limitations of the claims as properly interpreted are met by the prior art." *Beachcombers,* 31 F.3d at 1160, 31 USPQ2d at 1658. Ficosa does not challenge the construction of any claim term in the '953 patent, but instead challenges the second step, arguing that the limitations of claims 1 and 6 are met by Spease Exhibit 11 in combination with the knowledge of one skilled in the art and that, therefore, the '953 patent is invalid.

To prevail on its motion for JMOL, Ficosa must show that "there is no legally sufficient evidentiary basis for a reasonable jury to find for [Teleflex] on that issue." Fed.R.Civ.P. 50(a)(1). Teleflex points to Spease Exhibit 11 as substantial evidence in support of its contention that the '953 patent is not anticipated. Teleflex points to expert testimony and prior art of record as substantial evidence in support of its argument that the '953 patent is not obvious.

■■■■ Spease Exhibit 11 fails to show the "totally encapsulated" limitation of claims 1 and 6, as Ficosa admits. As we have repeatedly stated, anticipation requires that each limitation of a claim must be found in a single reference. *See, e.g., In re Donohue,* 766 F.2d 531, 534, 226 USPQ 619, 621 (Fed.Cir.1985). Although we have permitted the use of additional references to confirm the contents of the allegedly anticipating reference, *see id.,* we have made clear that anticipation does not permit an additional reference to supply a missing claim limitation. *See Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.,* 726 F.2d 724, 727, 220 USPQ 841, 842 (Fed.Cir.1984). Ficosa's argument attempts to "combine the teachings of the

references to build an anticipation." *Id.* We find Ficosa's anticipation argument unpersuasive in demonstrating lack of substantial evidence for the jury's verdict.

■■■■ As for obviousness, Ficosa fails to carry its burden on appeal. Ficosa argues in favor of obviousness on the basis of the Examiner's Statement of Reasons for Allowance, which cited elements present in Spease Exhibit 11. Ficosa contends that because the prior art, including Spease Exhibit 11, discloses the claimed features of claims 1 and 6 of the '953 patent, then the jury could not reasonably have found these claims non-obvious. Ficosa argues that a suggestion or motivation to combine the references may be supplied by the nature of the problem or the knowledge of one of ordinary skill in the art. Ficosa's argument essentially asks us to re-weigh the evidence and substitute our own factual findings for those of the jury. This we cannot do. We find that substantial evidence supports the jury's conclusion that the '953 patent is not anticipated by or obvious in view of Spease Exhibit 11.

## CONCLUSION

Because the district court correctly granted summary judgment of no best mode violation and substantial evidence supports the jury verdicts of infringement and validity of the '182 and '953 patents, we affirm the district court's decision on appeal.

**AFFIRMED**

### COSTS

No costs.