**STEPHEN KEY DESIGN, LLC, et al., Plaintiffs,**

v.

**LEGO SYSTEMS, INC., et al., Defendants.**

**No. C 01–2607 MJJ.**

United States District Court, N.D. California.

May 6, 2003.

Jason T. Anderson, John S. Ferrell, Robert J. Yorio, Carr & Ferrell LLP, Palo Alto, CA, for Plaintiffs.

Frederick L. Whitmer, Gerald Levy, Pitney Hardin Kipp & Szuch LLP, Morristown, NJ, John P. Bovich, Reed Smith Crosby Heafey LLP, San Francisco, CA, for Defendants.

## CLAIM CONSTRUCTION ORDER

JENKINS, District Judge.

### INTRODUCTION

This matter concerns the alleged infringement of: (1) U.S. Patent No. 6,086,697 (" '697 patent"), entitled "Rotating Label System and Method," and (2) U.S. Patent No. 6,237,269 (" '269 patent"), entitled "Roll–Fed Method for Constructing a Rotatable Label System." The Court will now construe the disputed claim terms within the two patents.

### FACTUAL BACKGROUND

Stephen M. Key is the named inventor in each of the patents, both of which are assigned to Stephen Key Design, LLP.[1] The two patents generally disclose systems and methods for "constructing a rotatable label and attaching the rotatable label to a container." '697 Patent at Abstract; '269 Patent at Abstract.

More specifically, the rotatable label described in the '697 patent "includes a release tab releasably attached to the container, or to an inner label adhered to the container, to secure the outer label to the container while the outer label is wrapped around the container." '697 Patent at Abstract. The release tab is subsequently detached, allowing the outer label to rotate about the container. The '269 patent describes methods by which the leading end of the outer label is "temporarily affixed to the container while the outer label is wrapped around the container. Once the trailing end is attached to a front surface of the leading end, the outer label can be rotated about the container over the inner label." '269 Patent at Abstract, 5:61–6:13. Both patents describe the outer label as preferably being adapted with a transparent portion or window permitting the viewing of information on the inner label and/or container. '697 Patent at Abstract; '269 Patent at Abstract.

Stephen Key Design and CCL Label (collectively, "Plaintiffs") assert that Lego Systems, Inc., The Lego Group, and Lego Schweiz AG (a.k.a. Lego Production AG) (collectively, "Defendants") infringe both patents by manufacturing, distributing, and selling a product called "Lego Bionicle," which utilizes a labeling system that employs a fixed inner label, and an outer label that rotates about the inner label and container. *See id.*, Exh. C.

### LEGAL STANDARD

■ The construction of a patent claim is a matter of law for the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). To determine the meaning of a patent claim, the Court considers three sources: the claims, the specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed.Cir.1995) *(en banc)*, *aff'd*, *Markman*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577.

■ First, the Court looks at the words of the claims. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir. 1996). "[T]he analytical focus must begin and remain centered on the language of the claims themselves, for it is that lan-

---

1. The '269 and '697 patents are attached as Exhibits A and B to Plaintiffs' Supporting

Evidence for Opening Claims Construction Brief ("Plaintiff's Supporting Evidence").

guage that the patentee chose to use to particularly point out and distinctly claim the subject matter which the patentee regards as his invention." *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1201–2 (Fed.Cir.2002)(internal quotations and citations omitted). Thus, there is a "heavy presumption" that claim terms bear their ordinary meaning, as understood by persons skilled in the relevant art. *Id.* at 1202; *see also Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1325.

■ Second, it is always necessary to review the specification to determine if the presumption of ordinary meaning is rebutted. *Texas Digital Systems*, 308 F.3d at 1204. The presumption is only rebutted in situations where the inventor (1) acting as his own lexicographer, clearly set forth an "explicit definition" of the term that is different from its ordinary meaning; or (2) has disavowed or disclaimed scope of coverage by using words of "manifest exclusion or restriction...." *Id.* "But if the meaning of the words themselves would not have been understood to persons of skill in the art to be limited only to the examples or embodiments described in the specification, reading the words in such a confined way would mandate the wrong result and would violate our proscription of not reading limitations from the specification into the claims." *Id; see also Teleflex*, 299 F.3d at 1326 ("limitations from the specification are not to be read into the claims...").

■ Third, the court may consider the prosecution history of the patent, if in evidence. *Vitronics*, 90 F.3d at 1582. "Although the prosecution history can and should be used to understand the language used in the claims, it too cannot enlarge, diminish, or vary the limitations in the claims." *Markman*, 52 F.3d at 980 (internal quotations and citations omitted). However, a concession made or position taken to establish patentability in view of prior art, upon which the examiner has relied, is a substantive position on the technology for which a patent is sought, and will generally generate an estoppel. In contrast, when claim changes or arguments are made in order to more particularly point out the applicant's invention, the purpose is to impart precision, not to overcome prior art. Such prosecution is not presumed to raise an estoppel, but is reviewed on its facts, with the guidance of precedent. *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1220 (Fed.Cir. 1995) (citations omitted).

■ Ordinarily, the Court should not rely on expert testimony to assist in claim construction, because the public is entitled to rely on the public record of the patentee's claim (as contained in the patent claim, the specification, and the prosecution history) to ascertain the scope of the claimed invention. *Vitronics*, 90 F.3d at 1583. "[W]here the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper." *Id.* Extrinsic evidence should be used only if needed to assist in determining the meaning or scope of technical terms in the claims, and may not be used to vary or contradict the terms of the claims. *Id.* (quoting *Pall Corp.*, 66 F.3d at 1216); *Markman*, 52 F.3d at 981. However, the Court is free to consult reference materials, such as dictionaries, for assistance in determining the ordinary meaning of a claim term and such sources are not considered extrinsic evidence. *Texas Digital Systems*, 308 F.3d at 1202–03. Further, the intrinsic record must be consulted to determine which definition is most consistent with the use of the word by the inventor. *Id.* at 1203. However, "[i]f more than one dictionary definition is consistent with the use of the word[ ] in the intrinsic record, the claim term[ ] may be construed to encompass all such consistent meanings." *Id.*

■ The Court also has the discretion to admit and rely upon prior art proffered by one of the parties, whether or not cited in the specification or the file history, but only when the meaning of the disputed terms cannot be ascertained from a careful reading of the public record. *Vitronics*, 90 F.3d at 1584. Referring to prior art may make it unnecessary to rely on expert testimony, because prior art may be indicative of what those skilled in the art generally believe a certain term means. *Id.* Unlike expert testimony, these sources are accessible to the public prior to litigation to aid in determining the scope of an invention. *Id.*

■ Finally, "[t]he subjective intent of the inventor when he used a particular term is of little or no probative weight in determining the scope of a claim (except as documented in the prosecution history)." *Markman*, 52 F.3d at 985 (citation omitted). "Rather the focus is on the objective test of what one of ordinary skill in the art at the time of the invention would have understood the term to mean." *Id.* at 986.

## ANALYSIS [2]

### A. "applying an external physical pressure"

■ The term "applying an external physical pressure" appears only in the '269 patent, and Plaintiffs propose the following construction of the term: "The application of force to the label(s) and container by holding and pressing apparatus that arises or acts from the outside; i.e., separate and independent from the labels and container." Joint Claim Construction ("JCC") at 1:9–13.

Defendants object to the extent Plaintiffs' proposed construction "attempts to make a dependant claim (claim 5 of the '269 patent) broader than its referenced independent claim (claim 1 of the '269 patent)." [3] Defendants' Opposition to Brief Re: Claim Construction of the '269 and '697 Patents ("Opposition") at 3:5–12; *see also* 35 U.S.C. § 112 ("a claim in dependant form shall be construed to incorporate by reference all the limitations of the claim to which it refers"). However, Defendants fail to offer—and the Court cannot find—any basis for determining that Plaintiffs' proposed construction would render claim 5 broader than claim 1.[4] Claim 5 is simply one of several dependant claims describing various methods of "temporarily coupling a leading end of an outer to the inner label while the outer label is wrapped about the object," as described in claim 1. *See* '269 Patent at Claims 2, 5–8.[5]

---

**2.** The parties withdraw the following terms from consideration: (1) "adhering a dot of glue"; (2) "applying a vacuum pressure"; (3) "applying a static electrostatic charge pressure"; (4) "applying an external gaseous pressure"; and (5) "rotating the outer label relative to the inner label."

**3.** Claim 1 of the '269 patent describes: "A method of applying a rotatable label to an object, comprising the steps of: [1] providing an object; [2] attaching an inner label with indicia disposed thereon about the object; [3] temporarily coupling a leading end of an outer label having indicia and a transparent portion thereon to the inner label while the outer label is wrapped about the object; [4] securing the outer label about the object; and [5]

uncoupling the leading end of the outer label to permit the outer label to rotate about the inner label and the object."

Claim 5 of the '269 states: "The method according to claim 1, wherein the step of temporarily coupling further comprises applying an external physical pressure to the outer label." *Id.*

**4.** To the extent Defendants' argument is based on its proposed construction of the term "temporarily coupling," this argument is mooted by the Court's construction of that term. *See infra* Section C.

**5.** Defendants also object to Plaintiffs' proposed construction of the term "applying an

Therefore, the Court adopts Plaintiff's proposed construction of "applying an external physical pressure"—"[t]he application of force to the label(s) and container by holding and pressing apparatus that arises or acts from the outside; i.e., separate and independent from the labels and container"—which is consistent with the relevant dictionary definition of "external." *See* Plaintiffs' Supporting Evidence, Exh. E (*Merriam–Webster's Collegiate Dictionary*, Tenth Edition) ("of, relating to, or connected with the outside or an outer part...applied or applicable to the outside"); *see Texas Digital Systems*, 308 F.3d at 1203 ("[d]ictionaries, encyclopedias and treatises, publicly available at the time the patent is issued, are objective resources that serve as reliable sources of information on the established meanings that would have been attributed to the terms of the claims by those of skill in the art").

### B. "temporarily coupling"

▉ The term "temporarily coupling" is used throughout both patents.[6] *Merriam–Webster's Collegiate Dictionary* defines "coupling" as "to fasten together." However, the parties' dispute more precisely relates to the definition of "temporarily." Plaintiffs contend that "temporarily coupling" means "[j]oiner, pairing, or bringing together to *momentarily* connect." JCC at 8:12–20 (emphasis added). On the other hand, Defendants argue that the "term requires *a temporary physical securing, adhering, or affixing, not mere physical contact*, between the leading end of the outer label and the inner label." *Id.*

(emphasis added). However, the definition of "temporarily"—"lasting for a time only"—is broad enough to encompass both "momentary" contact as well as "physical securing, adhering, or affixing." *See The Merriam Webster Dictionary, Home and Office Edition*, 1995. Consequently, the term is not limited in the way Defendants suggest. In fact, based on this definition, the only limitation on "temporarily" is that it not be permanent., *i.e.*, eventually allowing the outer label to rotate about the inner label and/or container.

This definition is also consistent with the respective patent specifications. The '269 patent specification describes several methods of temporarily coupling the leading end of the outer label with the inner label, including (1) a blast of air or other gas; (2) moisture; (3) a holding or pressing apparatus; (4) vacuum pressure; or (5) a static electric charge. *Id.* at 5:61–6:13.[7] The '697 patent, on the other hand, describes a method by which "a release tab is removably attached to a rotatable label to facilitate attachment of the label to a container. The release tab is adhered to the container, or to a label affixed to the container, to secure the label to the container while the label is wrapped around the container. The release tab is then detached from the label once the label is wrapped about the container to permit the label to rotate about the container." *Id.* at 1:64–2:4.

Therefore, the Court construes "temporarily coupling" to mean the following: to fasten together for a limited time, and, upon uncoupling, allowing the outer label

---

external physical pressure" to the extent it affects the Court's construction of "temporarily coupling." It does not.

6. The parties also dispute the terms "temporarily coupling an outer label to the inner label" and "temporary coupling to a leading end." However, the Court's construction of

the term "temporarily coupling" will apply to these terms as well.

7. The '269 patent specification also states that "[a] leading end is temporarily *affixed* to the container while the outer label is wrapped around the container." '269 patent at Abstract (emphasis added).

to rotate about the inner label and/or container.

### C. "temporarily adhering"

 The term "temporarily adhering" can be found in the '697 patent, and Plaintiffs propose the following construction of the term: "To temporarily hold fast or stick by or as if by gluing, suction, grasping, fusing or otherwise." JCC at 7:12–19. On the other hand, Defendants simply incorporate by reference their proposed construction of "temporarily coupling." *Id.* ("temporary physical securing, adhering, or affixing, not mere physical contact, between the leading end of the outer label and the inner label"). Although there seems to be no genuine dispute as to the meaning of the term "temporarily adhering," the Court adopts Plaintiffs' proposed construction of the term because it is consistent with the relevant definition contained in *Merriam–Webster's Collegiate Dictionary* ("to hold fast or stick by or as if by gluing, suction, grasping, or fusing").

### D. "uncoupling the leading end"

 The term "uncoupling the leading end" appears in the '269 patent, and Plaintiffs propose the following construction of the term: "To detach, disjoin or disconnect the temporary connection of the leading end." JCC at 15:9–13. Defendants object to Plaintiffs' proposed construction to the extent it is inconsistent with its proposed construction of "temporarily coupling." Finding no inconsistency, the Court adopts Plaintiffs' proposed construction of "uncoupling the leading end."

### E. Undisputed Terms

The meanings of the following terms are undisputed and will be adopted the Court for purposes of this action.[8]

1. **"attaching an inner label"** ('269 patent): "To make fast (as by gluing); fixedly joining the inner label to the container." JCC at 1:5–8; *see* Opposition at 4:1–10.

2. **"attaching and securing"**('269 patent): "Attaching the inner label and securing of the outer label" JCC at 3:5–9.

3. **"between the top and bottom label panels"** ('269 patent): "A recessed portion is provided thereby defining a top and bottom label panel at edges thereof. The recessed panel is between the top and bottom label panel." JCC at 3:9–15; *see also* March 5, 2003 Letter from Parties.

4. **"detaching the outer label from the inner label"** ('697 patent): "Rotating the outer label relative to the inner label to disengage the outer label from the inner label." JCC at 3:15–20; *see also* Opposition at 4:25–5:2.

5. **"detaching"** ('697 patent): "To release or disengage" JCC 3:21–4:9

6. **"feeding an inner label from the roll"** ('269 patent): "To move inner labels from a roll into a machine or opening in order to be applied to the container." JCC at 4:9–13; *see also* Opposition at 5:4–6.

7. **"feeding an outer label from a roll"** ('269 patent): "To move outer labels from a roll into a machine or opening in order to be applied to the container." JCC at 4:13–18; *see also* Opposition at 5:4–6.

8. **"holding the object stationary"** ('269 patent): "Immobilizing the container or permitting it to remain

---

8. Because the meanings of these terms have not been fully litigated, future litigants will not be not be bound these constructions.

at rest." JCC at 4:18–5:4; *see also* Opposition 5:8–10.

9. **"providing an adhesive"** ('269 patent): "To supply or make available an adhesive." JCC at 5:5–9; *see also* Opposition at 5:12–13.

10. **"providing to and bottom label panels"** ('269 patent): "A recessed portion is provided thereby defining a top and bottom label panel at the edges thereof." JCC at 5:9–14; *see also* March 5, 2003 Letter From Parties.

11. **"roll-fed method"** ('269 patent): "To move inner labels from a roll into a machine or opening in order to be applied to the container." JCC at 5:15–17; *see also* Opposition at 5:23–25.

12. **"rolling the object"** ('269 patent): "Rotating the container about an axis." JCC at 5:17–20; *see also* Opposition at 5:27–6:2.

13. **"securing the outer label about the object"** ('697 patent): "attaching the leading end of the outer label to the trailing edge of the outer label thereby forming a shape about the object." Opposition at 6:8–16.

14. **"securing the outer label"** ('269 patent): "attaching the leading end of the outer label to the trailing end so that a shape is formed outward of the inner label." Opposition at 6:18–23.

15. **"securing"** ('269 and '697 patents): "attaching the leading end of the outer label to the trailing end so that a shape is formed outward of the inner label." Opposition at 6:25–7:5.

## CONCLUSION

Based on the analysis above, the Court adopts the foregoing constructions of the disputed claim terms.

**IT IS SO ORDERED.**